UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BERRY LEE LIVINGSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15CV01318 AGF |
| ) | |
| WARREN COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Berry Lee Livingston brings this action under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical condition of an umbilical hernia while he was a pre-trial detainee at the Warren County, Missouri, Detention Center ("Detention Center"). The matter is now before the Court on two separate motions for summary judgment: (1) the motion of Defendants Dr. Richard Buckles, the doctor who provides medical care to inmates at the Detention Center; and Advanced Correctional Healthcare, Inc., ("ACHI"), the private entity that employs Dr. Buckles; and (2) the motion of Defendants Kevin Harrison, Sheriff of Warren County; Lesa Hobusch, the nurse at the Detention Center; and Doug Stonebarger, the administrator of the Detention Center. For the reasons set forth below, both motions will be granted.

## BACKGROUND

Plaintiff entered the Detention Center on April 24, 2015, as a pre-trial detainee. Plaintiff indicated on a medical questionnaire upon his entry that he had an umbilical hernia (since at least 1996). It is disputed as to whether Plaintiff had a hernia belt. On

May 13, 2015, Dr. Buckles conducted his initial evaluation of Plaintiff, at which time Dr. Buckles noted that Plaintiff had a reducible "golf ball size" abdominal hernia. Dr. Buckles observed that there was no bowel strangulation and that Plaintiff's abdomen was not tender. Dr. Buckles told Plaintiff not to strain, prescribed a daily stool-softener, and ordered a surgical evaluation. In a sworn declaration dated November 24, 2015, Dr. Buckles stated that he ordered the surgical evaluation to "appease" Plaintiff; that he did not believe that Plaintiff required surgery, as the risks of surgery outweighed the benefits; and that unless there is a strangulation, surgery to repair a hernia is "an elective procedure that is non-emergent." ECF No. 117-1. Dr. Buckles testified by deposition on August 12, 2016, that he expected that a consultation and surgery would be scheduled based on his order to do so. He also testified that a hernia belt does not do much good for an umbilical hernia. ECF No. 117-6.

Nurse Hobusch's notes (ECF No. 121-5) show that within three days of Plaintiff's initial visit with Dr. Buckles, she contacted a private surgical group to arrange for the evaluation and was told that it would not see Plaintiff without a $300 payment up front. On July 15, 2015, Hobusch contacted an area hospital that agreed to see Plaintiff for a consultation for $50, also to be paid in advance, but Plaintiff "refused to pay." Notes dated July 16, 2015, state that a consultation was set for August 25, 2015. Plaintiff was told to make sure to have $50 in his commissary account on that date to cover the fee. On August 3, 2015, the surgical consultation was cancelled due to Plaintiff's lack of funds. On August 24, 2015, Hobusch rescheduled Plaintiff's surgical consultation for

September 9, 2015, and advised Plaintiff that the hospital would not reschedule his surgical consultation in the event he did not have the $50.00 to pay.

Hobusch's medical notes during this period (EFC No. 121-5 at 17-26) state that Plaintiff was not taking the stool softener (he reported that it caused him diarrhea) or wearing a hernia belt. The notes also state that Hobusch observed Plaintiff on several occasions using stairs without a problem, doing a sit up from a picnic table, being social, and voicing no complaints. Her notes dated July 16, 2015, reflect that on that date Plaintiff told her that he thought his hernia was strangulated because he had not had a bowel movement for five days.

Plaintiff initiated this action pro se on August 25, 2015, claiming that Detention Center officials were deliberately indifferent to his serious medical needs by their failure to provide surgical treatment for his umbilical hernia because he did not have the funds in his inmate account to pay for a surgical consultation. Plaintiff alleged that the hernia was the size of a baseball and was causing continual pain and other problems. He stated that he wanted to have his hernia fixed, and asked for actual and punitive damages. Claims against the current four individual Defendants, named in their official and individual capacities, survived the Court's review under 28 U.S.C. § 19125(e).

On September 8, 2015, Plaintiff did not have the $50.00 in his commissary account to pay for the surgical consultation, and his appointment was cancelled and not rescheduled. In October 2015, Hobusch contacted Dr. William Truong, who agreed to provide Plaintiff with a surgical evaluation without a consultation fee. Dr. Truong

ordered a CT scan for Plaintiff that was conducted on February 26, 2015, and revealed a small umbilical hernia. By deposition dated May 24, 2016, Dr. Truong testified that he saw Plaintiff on February 26, 2016 and diagnosed a fat-containing umbilical hernia, that is, a hernia without any bowel content. Dr. Truong testified that people can live with such a hernia for months or years. He testified that he offered Plaintiff surgical treatment "because of his pain and to reduce the risk of [the hernia] becoming worse such as a stangulated bowel," but had "no qualms" about Plaintiff not having such treatment. Dr. Truong further testified that on March 2, 2016, he advised Stonebarger that if warning signs of hernia strangulation were to present, such as progressive pain or cessation of bowel function, Plaintiff would need to be seen immediately "for urgent vs. emergent repair of his hernia"; however, Plaintiff currently had a hernia that could be "electively repaired in the future." ECF No. 121- 7 at 4-7.

In his second amended complaint (ECF No. 67), filed on May 27, 2016, with the assistance of appointed counsel, Plaintiff added ACHI as a Defendant. He alleges that his hernia is the size of a baseball, causes him continuous pain, and hinders him from exercising, causing muscle atrophy. He claims that Defendants have demonstrated deliberate indifference to his serious medical needs by denying his repeated requests for necessary surgery to repair his hernia. Plaintiff seeks damages for the violation of his constitutional rights and for his pain and suffering, including emotional distress. He also seeks injunctive relief in the form of a court order directing Defendants to schedule Plaintiff for surgery to repair his umbilical hernia, regardless of his ability to prepay for

such treatment.

Plaintiff's expert witness, Dr. Gustavo van der Lancken, testified by deposition dated November 11, 2016, that he reviewed Plaintiff's medical record, and concluded that in the case of a patient with Plaintiff's "type of symptoms," although hernia repair surgery was not "urgent," in the sense that it had to be done within 24-48 hours, he would recommend fixing the hernia surgically within weeks.  ECF No. 121-8.

In his memorandum in opposition to the Warren County Defendants' motion for summary judgment, Plaintiff states that on or about April 14, 2017, he was transferred to the Fulton Reception and Diagnostic Center (a facility that is part of the Missouri Department of Corrections).  ECF No. 137 at 1 n.1.  The Court takes judicial notice of the fact that on that date, Plaintiff began service of a 15 year sentence on drug charges. https://www.courts.mo.gov/casenet/cases/charges.do [case no. 13BB-CR00988-02]

## ARGUMENTS OF THE PARTIES

### ACHI and Dr. Buckles

Defendants ACHI and Dr. Buckles first argue that they are entitled to summary judgment because Plaintiff did not exhaust his administrative remedies.  ACHI and Dr. Buckles, sued in his official and individual capacity, point to the facts that none of the grievances Plaintiff filed while at the Detention Center mentioned them, and that Plaintiff failed to appeal decisions of the shift supervisor and the jail administrator (Stonebarger).  ACHI next argues that it should be granted summary judgment because there is no respondeat superior liability under § 1983, and Plaintiff cannot establish, as a matter of

law, that ACHI had a policy that violated his constitutional rights. According to these Defendants, "[w]ho pays for [Plaintiff's] hernia surgery, which is truly the only allegation in the case, is not tied to any unconstitutional policy of [ACHI]." ECF No. 116 at 4-5.

Dr. Buckles argues that he is entitled to summary judgment because the facts show that Plaintiff's hernia is not a "serious medical need," in that the need for hernia surgery was not "urgent, or emergent, prior to the filing of Plaintiff's complaint or even now." *Id*. at 9. Dr. Buckles further argues that even assuming that Plaintiff's hernia condition was "serious," there is no evidence that Dr. Buckles was indifferent to Plaintiff's medical needs as he (Dr. Buckles) gave Plaintiff medication, a hernia belt, education and instruction, and, importantly, ordered a surgical consultation. Lastly, these two Defendants argue that, in any event, Plaintiff is not entitled to punitive damages.

**Harrison, Hobusch, and Stonebarger**

The three Warren County Defendants, also sued in their individual and official capacities, argue that the record shows that they provided Plaintiff with the necessary medical attention and monitoring to maintain his health with respect to his umbilical hernia, and that Plaintiff's desire for different treatment, namely surgery, is insufficient to assert a constitutional violation. These Defendants also argue that they are entitled to summary judgment on the basis of qualified immunity, which shields a §1983 defendant, sued in his individual capacity, from a claim for damages that does not involve the violation of a constitutional right that was "clearly established" at the time of the alleged deprivation. They note that the Seventh and Ninth Circuits have held that prison

6

officials' refusal to provide "elective" surgery to repair a reducible hernia does not give rise to an Eighth or Fourteenth Amendment violation. *See Johnson v. Doughty*, 433 F.3d 1001, 1015 (7th Cir. 2006), and *Hamby v. Hammond*, 821 F.3d 1085, 1090-93 (9th Cir. 2016). As a result, the Warren County Defendants argue, it cannot be said that Plaintiff has a clearly established constitutional right to have surgery to repair his hernia.

The Warrant County Defendants also argue that the doctrine of official immunity protects them, as Missouri public employees, from liability resulting from conduct during the course of their official duties and the performance of discretionary acts. Lastly, they argue that this Court does not have the power to compel the Warren County Defendants to provide Plaintiff with surgery to repair his hernia, and even if the Court did have such authority, here the record establishes that the surgery was not urgent or emergent.

## **DISCUSSION**

As an initial matter the Court concludes that Plaintiff can no longer seek injunctive relief against Defendants in this case because he is no longer incarcerated at the Detention Center. *See Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482, 482 (8th Cir. 2008) (holding that a state inmate's claim for injunctive relief ordering prison officials to provide a diet containing Halal meat was moot upon his transfer to federal custody); *Randolph v. Rodgers*, 253 F.3d 342, 345-46 (8th Cir. 2001) (denying a prisoner's requested prospective injunctive relief as to several employees of a correctional facility at which the prisoner was no longer incarcerated, because those employees had no authority to enact any granted injunctive relief at the prisoner's present facility).

7

With respect to Plaintiff's claims for damages, when analyzing inadequate medical care claims under the Fourteenth Amendment for pretrial detainees, courts apply the same deliberate indifference standard that governs Eighth Amendment claims by convicted prisoners. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). "A prison official is deliberately indifferent if she knows of and disregards a serious medical need or a substantial risk to an inmate's health or safety." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528-29 (8th Cir. 2009) (en banc) (citation omitted). Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by [other prison officials] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 99, 104-105 (1976). The deliberate indifference standard includes "both an objective and a subjective component: The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citation omitted). "[A] mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted).

A serious medical need in this context "is one that has been diagnosed by a physician as requiring treatment." *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 388 (8th Cir. 2014) (citation omitted). A committed person's desire for a purely elective procedure does not rise to the level of a serious need. *Roe v. Crawford,* 514 F.3d 789,

801 (8th Cir. 2008) (holding that an inmate's desire for an elective nontherapeutic abortion did not raise an issue of a serious medical need). An inmate contending that a delay in medical care violated his constitutional rights "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (citation omitted).

It is undisputed that the only effective remedy for an umbilical hernia is surgery and that complications, such as strangulation, can develop that would make immediate surgery necessary. In *Williams v. Prison Health Services, Inc.*, 167 F. App'x 555, 558-59 (7th Cir. 2006), the Seventh Circuit held that a prison medical-care provider's policy to classify any umbilical hernia as elective surgery that was routinely denied to prisoners, stated a §1983 claim for deliberate indifference to a serious medical need. *See also Delker v. Maass*, 843 F. Supp. 1390, 1401 (D. Or. 1994). But the evidence in the present case shows that Plaintiff's need for hernia repair surgery was monitored and evaluated on its own merits. Although Plaintiff himself has reached the conclusion that he should have been given surgery when he requested it, no physician prescribed it as immediately necessary. Dr. van der Lancken's statement that he would recommend that a person with Plaintiff's symptoms have repair surgery within weeks, is not evidence of a serious medical need that existed while Plaintiff was at the Detention Center. Of note here is that Plaintiff had had the umbilical hernia for almost 20 years when he entered the Detention Center, and indeed, no complications arose from the hernia during the time he remained at the Detention Center. The only mention that Plaintiff experienced hernia strangulation

in the relevant time period was Plaintiff's own opinion, as reported in Hobusch's medical notes. Furthermorte, the record does not reflect that while at the Detention Center, Plaintiff asked for pain medications and was denied such relief.

Thus, the Court is left only with Plaintiff's disagreement with his medical care, which is not actionable, as to any of the Defendants. *See McArty v. Corr. Med. Servs. Inc.*, No. 5:06CV00229 WRW/HDY, 2008 WL 536770, at *3 (E.D. Ark. Feb. 25, 2008) (granting summary judgment to prison officials and medical-care providers on an inmate's claim that they violated his Eighth Amendment rights by refusing to authorize surgical repair for his umbilical hernia, where physicians recommended that surgery be considered, but no physician ever prescribed the surgery); *Birdsong v. Bishop*, No. CIV A 06-CV-297-JMH, 2008 WL 5135325, at *15 (E.D. Ky. Nov. 26, 2008) (same).

The Court concludes that the Warren County Defendants, in their individual capacities, are entitled to summary judgment for the additional reason of qualified immunity. As noted above, qualified immunity shields a §1983 defendant, sued in his individual capacity, from a claim for damages that does not involve the violation of a constitutional right that was "clearly established" at the time of the alleged deprivation. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). A constitutional right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." *Id*. (citation omitted). The Supreme Court "has

made it clear that there need not be a case with 'materially' or 'fundamentally' similar facts in order for a reasonable person to know that his or her conduct would violate the constitution." *Young v. Selk*, 508 F.3d 868, 875 (8th Cir. 2007) (quoting *Hope*, 536 U.S. at 741). Instead, the unlawfulness must merely be apparent in light of pre-existing law. *Hope*, 536 U.S. at 739 (holding that state inmate's right not to be handcuffed to a hitching post for seven hours was "clearly established," in light of binding circuit precedent, a state Department of Corrections regulation, and a Department of Justice report informing the Department of Corrections of the constitutional infirmity in its use of the hitching post). Whether a constitutional right is clearly established is a legal question for the court to decide. *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 459 (8th Cir. 2011).

Here, there is no binding circuit precedent, nor any other another source for concluding that a "clearly established" constitutional right has been violated. *See Hamby v. Hammond*, 821 F.3d 1085, 1090-91 (9th Cir. 2016); *Johnson v. Doughty*, 433 F.3d 1001, 1015 (7th Cir. 2006).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants Advanced Correctional Healthcare, Inc., and Richard Buckles for summary judgment is **GRANTED**. (ECF No. 115.)

**IT IS FURTHER ORDERED** that the motion of Defendants Kevin Harrison, Lesa Hobusch, and Doug Stonebarger for summary judgment is **GRANTED**. (ECF

No. 119.)

All claims against all parties having been resolved a separate final Judgment will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of June, 2017.